UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| $52,388.41, $144,980.94, $17,677.48, | § | |
| and $53,071.08 in U.S. Dollars, | § | |
| Defendants. | § | |

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE
## IN REM AND NOTICE TO POTENTIAL CLAIMANTS

The United States of America, Plaintiff, files this action for forfeiture *in rem* against the above-listed Defendant Properties. The United States alleges on information and belief as follows:

### JURISDICTION AND VENUE

1. The Defendant Properties were seized in the Southern District of Texas and are within the jurisdiction of this Court. The United States alleges that acts or omissions giving rise to the forfeiture occurred in Southern District of Texas.

2. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. §1345 and over an action for forfeiture under 28 U.S.C. §1355(a). This Court has *in rem* jurisdiction over the Defendant Properties under 28 U.S.C. §1355(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1355, 1391(b), and 1395.

1

**THE DEFENDANT PROPERTIES SUBJECT TO FORFEITURE**

3.    The Defendant Properties are a total of $268,117.91 in money seized in the Southern District of Texas on August 1, 2014, from four separate bank accounts:

(1)    $52,388.41 seized from a certificate of deposit at Lone Star National Bank with an account number ending in 8387 and held in the name of ABC Durable Medical Equipment (hereinafter, "ABC CD x8387");

(2)    $144,980.94 seized from a checking account at Lone Star National Bank with an account number ending in 9547 and held in the names of Adalberto Salazar and Veronica S. Vela (hereinafter, "Owners x9547");

(3)    $17,677.48 seized from a savings account at Lone Star National Bank with an account number ending in 0641 and held in the names of Adalberto Salazar and his wife (hereinafter, "Personal x0641"); and

(4)    $53,071.08 seized from a certificate of deposit at Lone Star National Bank with an account number ending in 1935 and held in the names of Adalberto Salazar and his wife (hereinafter, "Personal CD x1935").

Because claims were filed in the administrative forfeiture proceedings, the forfeitures are proceeding judicially.

**STATUTORY BASIS FOR FORFEITURE**

4.    This is a civil action in rem brought to enforce the provisions of Title 18, United States Code, Section 981(a)(1)(C), which provides for the forfeiture of

2

"[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C.] section 1956(c)(7) of this title), or a conspiracy to commit such offense." Offenses under Title 18, United States Code, Sections 1343 (wire fraud), 1347 (health care fraud), and 1349 (conspiracy) are "specified unlawful activity" pursuant to Title 18, United States Code, Section 1956(c)(7).

5.      The Defendant Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from, in whole or in part, proceeds traceable to specified unlawful activity.

6.      In addition, this civil action in rem is brought to enforce the provisions of Title 18, United States Code, Section 981(a)(1)(A), which provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 [of Title 18], or any property traceable to such property."   Knowingly conducting a financial transaction involving more than $10,000 in proceeds of specified unlawful activity is money laundering in violation of Title 18, United States Code, Section 1957.

7.      The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property involved in, or traceable to, money laundering in violation of 18 U.S.C. § 1957.

3

8. Finally, with regard to the civil forfeiture of fungible property, Title 18, United States Code, Section 984 provides that funds deposited in an account in a financial institution that are found in the same account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture so long as the action is commenced within one year from the date of the offense.

## FACTS

9. The Medicare program is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b). Medicare is a federally funded health insurance program that provides benefits to certain individuals who are over the age of 65 or disabled. Qualified Medicare patients are commonly referred to as "beneficiaries."

10. The Medicaid program is also a "health care benefit program" as defined by Title 18, United States Code, Section 24(b). The Medicaid program is a state-administered health insurance program funded predominantly by the U.S. Government, and it helps pay for reasonable and necessary medical services for individuals who are deemed eligible under state low-income programs. The Medicaid program may pay a portion of a claim originally submitted to Medicare in the event the beneficiary has both Medicare and Medicaid coverage.

4

## A.     Overview of ABC DME and Fraudulent Activity

11.     ABC Durable Medical Equipment Inc. ("ABC DME") was a privately-owned business that supplied durable medical equipment and supplies, especially incontinence supplies, to various individuals.   The United States alleges that ABC DME submitted fraudulent bills to Medicare, Medicaid, and private insurance companies.

12.   Adalaberto Salazar and Veronica Vela (who are father and daughter) owned and operated ABC DME in Mission, Texas, from approximately 2006 through 2012.   ABC DME stopped doing business in or about 2012, although there was a time lag such that some payments continued in 2013 for claims submitted for 2012.

13.   From 2007 through 2013, the amount of payments that ABC DME received from Medicaid was over $5 million, in addition to approximately $1.5 million from Medicare and approximately $400,000 from private insurance companies.

14.   A review of data from Medicaid, in particular the billing codes used for incontinence supplies, shows that the majority of ABC DME's business related to incontinence supplies.   Specifically, for the period July 2012 through November 2013, incontinence supplies made up over 90% of the Medicaid DME

reimbursements to ABC DME.

15.    There is reason to believe that ABC DME billed for adult pull-up underwear-style diapers ("pull-ups") and other durable medical equipment and incontinence supplies that were *never delivered* to the beneficiaries as represented.

16.    There is reason to believe that ABC DME billed for pull-ups and other durable medical equipment and incontinence supplies that were *not medically necessary* to the beneficiaries.

17.    There is reason to believe that ABC DME billed for pull-ups and other durable medical equipment and incontinence supplies that were *not authorized by the beneficiaries' physicians*, as required by both Medicare and Medicaid.

18.    The United States alleges that any arguably legitimate activity of ABC DME, such as the purchase and delivery of some medically necessary supplies to some qualified beneficiaries, acted as an effective "smoke screen" to help hide the fraudulent charges, lending an aura of legitimacy to the business and lowering the chances that the fraudulent billings would be detected.

**B.    Financial Accounts and Fraud Proceeds**

19.    ABC DME opened a checking account at Lone Star National Bank in 2006 ("Checking x2514"), and this account received more than $6.8 million in payments from Medicaid, Medicare, and private insurance companies for claims

6

filed by ABC DME. There was also an associated ABC DME savings account opened in 2010, which was funded from Checking x2514 and other ABC DME property ("Savings x4388"). Both Checking x2514 and Savings x4388 were business accounts funded with the proceeds of health care fraud.

    1.   Defendant Property:  $52,388.41 from ABC CD x8387

    20.   On August 29, 2011, ABC DME purchased a 5-year Certificate of Deposit x8387 for $50,000 from funds held in Savings x4388. The United States alleges that the funds constituted health care fraud proceeds from the fraudulent business of ABC DME.

    21.   Therefore, Defendant Property $52,388.41 (seized from ABC CD x8387) is subject to forfeiture as property constituting or traceable to health care fraud proceeds. In addition, because the purchase of the CD was made with more than $10,000 in fraud proceeds, the purchase violated 18 U.S.C. § 1957, and the Defendant Property is also subject to forfeiture as property involved in, or traceable to, money laundering.

    2.   Defendant Property:  $144,980.94 from Owners x9547

    22.   After ABC DME stopped doing business, the owners—Adalberto Salazar and his daughter, Veronica Vela—established a joint personal checking account in 2013 in their own names. They then transferred the remaining ABC

DME proceeds into that new account, Owners x9547.  Specifically, on or about November 13, 2013, they moved $274,202.31 from the ABC DME checking account into its savings account, and then (on that same day) the entire balance of $294,337.45 in the savings account was placed into a November 13, 2011 Cashier's Check to Adalberto Salazar.  The Cashier's Check was used as the opening deposit for the Owners x9547 account.

23.     Therefore, Defendant Property $144,980.94 (seized from Owners x9547) is subject to forfeiture as property constituting or traceable to health care fraud proceeds.  In addition, because the transfers and cashier's check purchase were made with more than $10,000 in fraud proceeds, the financial transactions violated 18 U.S.C. § 1957, and the Defendant Property is also subject to forfeiture as property involved in, or traceable to, money laundering.

3.   Defendant Property:   $17,677.48 from Personal x0641

24.     Adalberto Salazar was a co-owner of ABC DME.  Because Salazar is an owner who was paying himself for managing a business engaged in pervasive fraud, the United States alleges that Salazar's entire salary can be considered to be fraud proceeds.  Salazar generally deposited his ABC DME paychecks into a personal *checking* account held jointly with his wife.  On August 5, 2010, Salazar opened a personal *savings* account ("Personal x0641") with a $50,000 deposit from

his checking account.   He made no other deposits to the savings account.

25.     Therefore, Defendant Property $17,677.48 (seized from Personal x0641) is subject to forfeiture as property constituting or traceable to health care fraud proceeds.   In addition, because the $50,000 deposit was made with more than $10,000 in fraud proceeds, the financial transaction violated 18 U.S.C. § 1957, and the Defendant Property is also subject to forfeiture as property involved in, or traceable to, money laundering.

4.   Defendant Property:   $53,071.08 from Personal CD x1935

26.     As stated above in the previous section, Salazar opened his savings account, Personal x0641, with a $50,000 deposit from his checking account.   One of the withdrawals from the savings account (Personal x0641) was a $23,000 transfer that was used as part of the purchase of a $53,000 Certificate of Deposit ("Personal CD x1935").   The $23,000 was briefly transferred to the checking account before being used in the purchase of the CD.

27.   The $23,000 portion is subject to forfeiture as property constituting or traceable to health care fraud proceeds.   Furthermore, it is significant that the purchase of the CD was a single financial transaction made with more than $10,000 in fraud proceeds.   The financial transaction therefore violated 18 U.S.C. § 1957, and the entire amount of the Defendant Property $53,071.08 (seized from Personal

9

CD x1935) is thus subject to forfeiture as property involved in, or traceable to, money laundering.

## CONCLUSION

28.  Under the totality of the circumstances, it is believed that the Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to specified unlawful activity; and under 18 U.S.C. § 981(a)(1)(A) as property involved in, or traceable to, money laundering in violation of 18 U.S.C. § 1957.

## NOTICE TO ANY POTENTIAL CLAIMANT

29.  YOU ARE HEREBY NOTIFIED if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  The verified claim must be filed no later than 35 days from the date this complaint was sent to you in accordance with Rule G(4)(b); or, if this Complaint was not sent to you, no later than 60 days after the first day of publication of notice on an official internet government forfeiture site, in accordance with Rule G(5)(a)(ii)(B).

30.    An answer or a motion under Federal Rule of Civil Procedure 12 must be filed no later than 21 days after filing the claim.   The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this complaint.

## RELIEF REQUESTED

31.    The United States will serve notice, along with a copy of this Complaint, on the property owners and on persons who reasonably appear to be potential claimants.   The United States seeks a final judgment forfeiting the Defendant Properties to the United States and any other relief to which the United States may be entitled.

/

/

/

/

/

/

/

/

/

11

Respectfully submitted,

Kenneth Magidson
United States Attorney
Southern District of Texas

By:    KRISTINE E. ROLLINSON
Assistant United States Attorney
Texas State Bar No. 00788314
Southern District of Texas 16785
1000 Louisiana, Suite 2300
Houston, Texas   77002
tel. (713) 567-9000

CHRISTOPHER SULLY
Assistant United States Attorney
Texas State Bar No. 24072377
Southern District of Texas 1119552
1701 W. Bus. Hwy. 83, Ste. 600
McAllen, TX 78501
tel. (956) 618-8010

12

## VERIFICATION

I, Robert A. Kunz, a Special Agent employed by the Federal Bureau of Investigation, declare under the penalty of perjury, as provided by 28 U.S.C. ' 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 3 and 11 - 28 of the Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation, and they are true and correct to the best of my knowledge and belief.

Executed on the 8th day of January 2015.

Robert A. Kunz
Special Agent
Federal Bureau of Investigation

13